MORRIS ADES, *ET AL.*, PLAINTIFFS-RESPONDENTS, v.
MAYOR AND COUNCIL OF THE BOROUGH OF DEAL,
*ET AL.*, DEFENDANTS, AND BOARD OF CHOSEN FREE-
HOLDERS OF THE COUNTY OF MONMOUTH, DEFEND-
ANT-APPELLANT.

Argued October 21, 1975—Decided January 20, 1976.

Mr. *William E. Russell* argued the cause for appellant (*Messrs. Pillsbury, Barnacle, Russell & Carton,* attorneys; *Mr. John M. Pillsbury,* on the brief).

Mr. *Richard J. McManus* argued the cause for respondents (*Messrs. Anschelewitz, Barr, Ansell & Bonello,* attorneys).

PER CURIAM. As it evolved from complaint through entry of judgment, this case presents the question whether plaintiffs have established a cause of action for injunctive relief to abate flooding against the defendant Monmouth County. Plaintiffs are residential property owners in Deal bordering on Poplar Brook which floods several times a year during heavy rains, causing damage to their properties. Sundry other defendants originally joined, and various crossclaims, have been dismissed at or prior to trial, and no issues pertaining to such dismissals survive. At trial plaintiffs offered no proofs as to money damages and sought only injunctive relief.

The county about 1927 built a bridge on Almyr Avenue in Deal crossing Poplar Brook in a north-south direction, with a rectangular culvert 12 feet wide by 2½ feet deep to permit the brook to pass beneath it. The brook, about 15–20 feet wide at that point, rises in Ocean Township, and flows easterly to the ocean, about 2000 feet east of Almyr Avenue. The injunction issued by the Chancery Division requires the county to propose a plan to the State Water Policy and Supply Council "designed to prevent the flooding [of the brook] which plan will include but not be limited to con-

sideration of a change in the structure and design of the culvert at Almyr Avenue and a change in the gradient and profile of Poplar Brook from the Norwood Avenue Bridge to Ocean Avenue, and any other steps that are necessary to be done to prevent further flooding of plaintiffs' property". Upon approval of the plan by the Council, the county is directed to effectuate it.

The Appellate Division affirmed on the oral opinion of the trial court. This court granted certification. 68 *N. J.* 281 (1975).

Norwood Avenue and Ocean Avenue are the major north-south thoroughfares in Deal west and east, respectively, of Almyr Avenue, and are about 2000 feet apart. It is undisputed that the county does not own or control Poplar Brook either east or west of the Almyr Avenue bridge. The controlling question on this appeal is the matter of the requirement of the injunction that the county effectuate changes in the stream bed of Poplar Brook.

The principal proofs at the trial were presented through engineering witnesses, one Poznak for the plaintiffs and one Barrett for the county, both apparently well qualified as experts. The witnesses were in agreement that the culvert is now inadequate for the accommodation of the volume of water which reaches Almyr Avenue, due to upstream development leading to increased runoff from paved surfaces as well as the construction of drains and sewers. The witnesses differed sharply, however, as to whether the inadequacy of the culvert is the effective cause of the flooding.

Poznak testified that the flooding is due to the fact that, because the culvert opening is too small, "water is bypassing and going around each side of it, causing siltation on the downstream side of the bridge." While Poznak did not explain the contribution of the siltation to the flooding, the county witness Barrett did so.

Barrett testified, in effect, that the flooding at Almyr Avenue is due to the combined effect of inadequate gradient of the stream between Norwood Avenue and Ocean Avenue

and the narrowness of the stream channel. There is no change of grade at all for 400 feet east of the bridge. These factors reduce the velocity of the flow, which in turn causes excessive siltation. The resulting siltation itself reduces flow velocity, aggravating the underlying problem in a circular fashion. These are the effective causes of the flooding at Almyr Avenue. If no more were done than to redesign the culvert to increase the area of the opening, the relief would be only temporary since the inadequate downstream gradient would cause the channel to narrow again, the flow velocity to decrease and the siltation to increase. The difficulty would be compounded by the necessary increase in the height of the culvert opening, as this would require raising the bridge structure and act as a partial dam against the passage of the water over Almyr Avenue at flood times.

Barrett's testimony was not refuted by plaintiffs and obviously impressed the trial judge, indeed to the extent of an implied finding that Barrett was correct in saying that an essential step toward a solution of the problem would be an in-depth study of how the gradient could be improved from Norwood Avenue to Ocean Avenue. From this premise, the court concluded that since it was "obvious that one entity must do the work" and the county was "the logical entity to propose the plan and do the work," the injunction against the county was the appropriate relief to be awarded. The court made no finding that a redesign of the bridge and culvert alone would abate the flooding. The court's only express finding in this regard was that the reasons for the flooding were "basically two-fold;" the increased building, etc. upstream, increasing the water flow, and the silting throughout the brook slowing the velocity of the water. The opinion of the court mentions but does not respond to the county's contention that it has no obligation to remedy the condition of the stream bed as it does not own or maintain it.

We are compelled to conclude that on the proofs, the findings below, and the law, the award of a mandatory in-

junction of the breadth of that here ordered was erroneous as a matter of law.

■ The Almyr Avenue bridge and culvert was erected by the county pursuant to legislation (The Bridge Act) now found in *N. J. S. A.* 27:19–1 *et seq.* The act authorized county freeholders to construct and maintain bridges and gave a cause of action for damages to persons suffering personal or property injury by the wrongful neglect of the freeholders in connection with the "construction, erection, rebuilding or repair of a viaduct or bridge". *N. J. S. A.* 27:19–10. We need not here explore the question whether disrepair of the culvert would afford a basis under the statute for a legal claim by others than travellers injured as a result of the disrepair, *cf. Muench v. Medford Lakes Co., et al.,* 101 *N. J. Super.* 263 (App. Div. 1968), or as to whether, in any event, the statute contemplates the remedy of an injunction as distinguished from the action for damages expressly mentioned therein. It is clear that the Bridge Act does not ground an action against the county building or maintaining the bridge insofar as concerns the condition of the bed of the stream at places other than where it passes under the bridge or through the culvert therein.

■ It would appear that the county may have lawful authority to effect the improvements in Poplar Brook directed by the injunction ordered below. Counties have power to open or keep open any public waterway and to issue bonds to cover the costs. *N. J. S. A.* 40:14–1. Furthermore, they are authorized "to deepen, widen, straighten any ditch or watercourse and remove obstructions in any ditch or watercourse and control the flow of surplus and surface waters," *N. J. S. A.* 40:30–18; and to this end they may acquire property by eminent domain, *N. J. S. A.* 40:30–19, and provide by budget for the cost thereof, *N. J. S. A.* 40:30–20. However, this authority is clearly permissive, and imposes no affirmative duty on the county. *Murray Rubber Co. v. Trenton,* 103 *N. J. L.* 43, 46 (Sup. Ct. 1926), aff'd

o.b. 105 *N. J. L.* 496 (E. & A. 1929); *cf. Barney's Furniture Warehouse v. Newark,* 62 *N. J.* 456, 469–470 (1973).

█ For the reasons stated, at least so much of the injunction as orders the county to do anything other than with respect to the bridge-viaduct itself is in error and must be set aside.

The question remains as to the appropriate disposition of the other phases of the injunction. Substantial legal questions have been raised by the county as to whether considerations of municipal discretion vitiate the injunction even as to restructuring the bridge-culvert. See *Barney's Furniture Warehouse v. Newark, supra,* and note the uncertain effect of the provisions of the Bridge Act alluded to above.[1] But see *Hayden v. Curley,* 34 *N. J.* 420, 425–426 (1961); *cf. Jackson v. Hankinson and Bd. of Ed. of New Shrewsbury,* 51 *N. J.* 230 (1968). Compare the general liability of a nongovernmental agency for failure to maintain a culvert adequate when built but becoming inadequate as a result of later upstream development, and consequently producing injurious flooding nearby. *Board of Education of Borough of Manasquan v. State Department of Transportation,* 69 *N. J.* 92, decided this day.

Consideration of the foregoing legal questions would be unnecessary if, as apparently was the factual determination in the Chancery Division, ordering the county merely to redesign the bridge-culvert so as to enlarge the water passageway would not effectively solve the Almyr Avenue flooding problem and might, to the contrary, exacerbate it. In such case the injunction would be unwarranted.

The judgment is reversed, without costs, and the cause is remanded to the Chancery Division for such further pro-

---

[1] We have given no consideration to the effect of the New Jersey Tort Claims Act as it has not been argued and is not applicable to preexisting causes of action or to claims for injunctive relief. *N. J. S. A.* 59:1–4. But see *N. J. S. A.* 59:4–2.

ceedings, if any, as may be deemed appropriate, not inconsistent with this opinion. We do not retain jurisdiction.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.